In re ALLEGHENY LABEL, INC., Debtor.

Stanley G. MAKOROFF, Trustee, Plaintiff,

Lawyers Title Insurance Corporation, Defendant,

v.

ALLEGHENY GRAPHICS, INC., and Roughen Investment Company, Interpleader Defendants.

Stanley G. MAKOROFF, Trustee, Plaintiff,

v.

ROUGHEN INVESTMENT COMPANY, and Howard J. Roughen, Defendants.

Bankruptcy No. 90–1986–BM.
Adv. Nos. 90–0492–BM, 90–0493–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

June 28, 1991.

William R. Bishop, Sherrard, German & Kelly, P.C., Pittsburgh, Pa., for defendants Roughen Inv. Co. and Howard J. Roughen.

Roger S. Cunningham, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

The trustee seeks in Adversary No. 90–0492–BM to recover the sum of $18,500.00 held by defendant Lawyers Title Insurance Corporation as escrow agent ("escrow agent") and to which interpleader defendants Allegheny Graphics, Inc. ("Graphics") and Roughen Investment Company ("Roughen") claim entitlement. The trustee takes the position that these funds were property of debtor's bankruptcy estate as of commencement of this bankruptcy case and seeks to have them turned over to the estate pursuant to 11 U.S.C. § 542(a). Graphics and Roughen deny that the funds were ever property of the bankruptcy estate. As the trustee has failed to meet his burden of proof, judgment will be entered in this adversary action in favor of Graphics and Roughen and against the trustee.

The trustee seeks in Adversary No. 90–0493–BM to recover the sum of $32,411.61 paid to Roughen by the escrow agent on the theory that said payment constituted a prepetition preferential transfer pursuant to 11 U.S.C. § 547(b)(1). Roughen denies that certain elements required for a preferential transfer have been established. Judgment will be entered in this adversary action in favor of the trustee and against Roughen in the amount of $32,411.61, plus interest.

## I

## FACTS

Debtor Allegheny Label, Inc. attempted to sell its business in 1988–89. In order to locate a buyer, debtor retained J. Beckerman to act as exclusive broker.

Defendant Howard J. Roughen, principal of Roughen Investment Company, approached debtor in May of 1989 and offered to introduce debtor to a potential

Stanley G. Makoroff, Sable, Makoroff, Sherman & Gusky, Pittsburgh, Pa., for trustee.

Thomas P. McDermott, Feldstein, Grinberg, Stein & McKee, Pittsburgh, Pa., for interpleader defendant Allegheny Graphics, Inc.

Gail L. Gratton, Rose, Schmidt, Hasley & DiSalle, Pittsburgh, Pa., for defendant Lawyers Title Ins. Corp.

buyer if he was paid a commission. When Roughen refused to share the commission with anyone else, he too was retained as a broker and was informed that his commission would be paid by the buyer. The terms and conditions of Roughen's agreement with debtor, which were not reduced to writing, are subject to dispute.

Subsequent thereto, Roughen introduced debtor to Jeffrey B. Nedblake and G. Wesley Nedblake, Jr. On February 19, 1990, debtor and the Nedblakes executed a document entitled *Agreement For Sale Of Assets* ("Agreement") in which the Nedblakes (or their assignees) agreed to purchase all of debtor's assets. Paragraph 16(c) of the Agreement provided as follows:

> *Brokers Fees.* Without assuming any contractual liability to any third party, Buyer shall pay at Closing the sum of not more than $100,000.00 to Howard Roughen Investments, Pittsburgh, Pennsylvania, and/or Jay Beckerman, Philadelphia, Pennsylvania, as and for broker's and finder's fee for this sale pursuant to the joint written instructions from Brokers at Closing.

A dispute subsequently arose as to the exact amount of fees to which Roughen was entitled. On March 23, 1990, Roughen made demand upon debtor for payment of $50,000.00 upon consumation of the sale. Debtor's counsel informed Roughen that same day that Roughen and Beckerman were to share equally pursuant to a specified formula based upon the purchase price and that Roughen was entitled to $26,-024.00 according to that formula.

On March 30, 1990, debtor and Graphics, assignee of the Nedblakes, closed the transaction contemplated by the Agreement of Sale dated February 19, 1990.

That same day, debtor, Graphics, and Lawyers Title Insurance Corporation executed an escrow agreement ("first escrow agreement"). Graphics agreed to deposit the sum of $50,000.00 with the escrow agent, who in turn agreed to hold these funds in an interest-bearing account until it received written instructions from debtor, Graphics, and Roughen concerning distribution of the funds. If no such distribu-

tion was made within one (1) week, the escrow agent was to pay the sum of $18,-500.00 to Graphics (the Buyer). If no such distribution was made within three (3) months, the escrow agent was to pay the sum of $5,000.00 plus accrued interest to Graphics and the remaining $26,500.00 to debtor (the Seller).

Roughen, who was not a party to the first escrow agreement, filed a Complaint in Equity in the Court of Common Pleas of Allegheny County, Pennsylvania, on April 5, 1990, against debtor and the escrow agent. The relief sought included an injunction prohibiting the escrow agent from distributing the funds held in escrow, and an order directing debtor to specifically perform its obligations under the brokerage agreement as viewed by Roughen.

On some undesignated date in May of 1990, debtor, Graphics, the escrow agent, and Roughen executed a second escrow agreement which expressly superseded and replaced the first escrow agreement executed on March 30, 1990. It was agreed that Roughen would receive the sum of $31,500.00 once it settled and discontinued the above state court proceeding commenced on April 5, 1990. It was further agreed that Roughen would commence an arbitration proceeding against debtor and Graphics in state court to determine who was entitled to the remaining $18,500.00 held by the escrow agent.

On July 3, 1990, debtor filed a voluntary Chapter 7 petition. The trustee was appointed on July 6, 1990.

On July 31, 1990, Roughen settled and discontinued the Complaint in Equity and filed an arbitration proceeding against debtor and Graphics with respect to the remaining $18,500.00 held by the escrow agent.

On August 14, 1990, the escrow agent paid the sum of $32,411.61 to Roughen in accordance with the terms of the second escrow agreement.

Pursuant to an Order of Court dated January 31, 1991, Lawyers Title Insurance deposited the sum of $18,500.00 plus accrued interest with the Clerk of Court of

the Bankruptcy Court pending resolution of Adv.No. 90–492 and is no longer involved in that proceeding.

## II

### ADVERSARY NO. 90–0493–BM

The following elements must be established in order for the trustee to prevail pursuant to 11 U.S.C. § 547(b) in Adversary No. 90–0493–BM:

(1) a transfer of debtor's property occurred;

(2) to or for the benefit of a creditor;

(3) for or on account of an antecedent debt owed by the debtor before the transfer occurred;

(4) made while the debtor was insolvent;

(5) made on or within 90 days before the filing of the petition, or between one year and 90 days before the filing of the petition if the creditor is an insider; and

(6) the transfer enables the creditor to receive more than it would if:

(A) the case were brought under Chapter 7;

(B) the transfer had not occurred; and

(C) the creditor received payment for the debt to the extent provided under the Code.

*In re Pittsburgh Cut Flower Co., Inc.*, 124 B.R. 451, 459 (Bankr.W.D.Pa.1991) (*citing In re Hartley*, 825 F.2d 1067, 1069 (6th Cir.1987)).

■ The trustee has the burden of proving elements (1), (2), (3), (5), and (6) by a preponderance of the evidence. *In re Prescott*, 805 F.2d 719, 726 (7th Cir.1986). A debtor is presumed to be insolvent during the preference period. *See* 11 U.S.C. § 547(f). This presumption requires a defendant to present evidence to rebut the presumption, but does not relieve the trustee of the ultimate burden of proof. *In re Writing Sales Ltd. Partnership*, 96 B.R. 175, 177 (Bankr.E.D.Wis.1989). All of the above elements must be present in order for the trustee to avoid a transaction as a preference. *In re Wey*, 854 F.2d 196, 198 (7th Cir.1988).

Defendants do not seriously dispute elements (2), (4), and (6). They can hardly deny that a transfer was made for their benefit as creditors. The argument of February 19, 1990 at ¶ 16(c) expressly stated that the buyer assumed no liability to a third party. If Roughen was not a creditor of debtor, then it was a creditor of no one and had no claim to the funds. They do not deny that debtor was insolvent during the preference period. Also, they do not deny that they received more than they would have had they been paid in accordance with the provisions of the Bankruptcy Code.

Defendants dispute elements (1), (3), and (5). Specifically, they deny that the transfers that were made were transfers of an interest of the debtor in property. They also deny that said transfers were on account of an antecedent debtor owed to them by debtor. Finally, they deny that any transfer of an interest of debtor in property occurred on or within 90 days of the filing of the bankruptcy petition.

A.) *Transfer Of An Interest Of Debtor In Property.*

■ "Transfer" is defined as including:
... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property ...

11 U.S.C. § 101(54).

Defendants cannot dispute that the following transactions all qualify as transfers in connection with the debt owed to Roughen by debtor:

(1) the creation of the first escrow agreement and the depositing of $50,000.00 with the escrow agent on March 30, 1990;

(2) the creation of the second escrow agreement in May of 1990; and

(3) the payment on August 14, 1990 of the sum of $32,411.61 by the escrow agent to Roughen.

Rather, defendants deny that the debtor had any interest in the property disposed of when these transactions occurred. According to defendants, the property disposed of belonged to *the buyer, Graphics.*

Defendants' contention is without merit. Debtor had an interest in the property disposed of in each of these transfers.

What is and what is not property of a debtor's bankruptcy estate is specified at 11 U.S.C. § 541. In general, the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of commencement of the case". 11 U.S.C. § 541(a)(1).

■ The scope of § 541(a) is broad and ubiquitous. *U.S. v. Whiting Pools*, 462 U.S. 198, 204 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983). All kinds of property are included. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977); *also* S.Rep.No. 989, 95th Cong., 2d Sess. 82 (1978). U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6322, 6323. It is sufficiently broad to include *proceeds* derived from property of the estate. 11 U.S.C. § 541(a)(6). The term "proceeds", although undefined by the Code, is not to be used in a confining sense, as it is in the Uniform Commercial Code ("UCC"). Rather, it is meant to be a broad concept encompassing all kinds of proceeds derived from property of the estate. *Id.*

The sum of $31,500.00 which was placed into escrow and ultimately distributed to Roughen pursuant to the terms of the second escrow agreement was part of debtor's bankruptcy estate. Debtor unquestionably had a property interest in its assets at the time of the closing on March 30, 1990. The funds distributed to Roughen were part of the proceeds realized from the sale of debtor's assets. Graphics had agreed in the Agreement of Sale to pay not more than $100,000.00 to Roughen and/or Jay Beckerman in broker's and finder's fees for the sale pursuant to joint written instruction from Roughen and Beckerman at the closing. The purchase price paid by Graphics of necessity was reduced by the amount to which Roughen was entitled. Graphics' agreement to pay these fees and commissions was not a gratuitous gesture on its part. Rather, it was part of the consideration paid for its acquisition of debtor's assets.

Defendants argue that the funds in question were never property of debtor's bankruptcy estate because said funds were "earmarked" to pay a designated creditor.

Their reliance upon the "earmarking" doctrine is misplaced. "Earmarking" applies only to a specific type of transaction:

> If all that occurs in a "transfer" is the *substitution of one creditor for another,* no preference is created because the debtor has not transferred property of his estate; he still owes the same sum to a creditor, only the identity of the creditor has changed. This type of transaction is referred to as "earmarking" ... (emphasis added).

*Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1356 (5th Cir.), *rehearing denied,* 801 F.2d 398 (5th Cir. 1986).

■ It is prerequisite of earmarking that the funds used to pay a creditor are derived from a loan or other extension of credit from a third party. *In re Hartley,* 825 F.2d at 1069 (*citing Grubb v. General Contract Purchase Corp.,* 94 F.2d 70 (2d Cir.1938)). The fundamental inquiry in determining whether the doctrine applies is whether the transfer at issue has diminished debtor's estate. *In re New York City Shoes,* 98 B.R. 725, 728 (Bankr.E.D.Pa. 1989), *reversed on other grounds,* 880 F.2d 679 (3rd Cir.1989). If other creditors are not adversely affected by such a transfer, there is no basis for avoiding it as a preference. *Id.*

The doctrine of "earmarking" does not apply to the present case because the payment to Roughen, although made to a creditor of debtor, was *not* derived from a loan (or other extension of credit) by Graphics to debtor. This was not merely a substitution of one creditor for another. Rather, the payment was part of the consideration paid by Graphics for the purchase of debtor's assets. Moreover, the payment effectively diminished the assets available to satisfy debtor's other creditors.

B.) *For Or On Account Of An Antecedent Debt.*

■ A transfer may be avoided as a preference only if it was for or on account

of an antecedent debt owed by the debtor before the transfer was made. *See* 11 U.S.C. § 547(b)(2).

Defendants deny that the debt owed to Roughen by debtor was antecedent to the transfer that occurred when the first escrow agreement was created on March 30, 1990.

A debt is antecedent, for purposes of § 547(b), only if the debtor is legally obligated to pay it before a transfer on account of that debt is made. *In re Fonda Group, Inc.*, 108 B.R. 956, 959 (Bankr.D.N.J.1989).

In order to determine whether the debt owed to Roughen by debtor was antecedent to any transfer of debtor's property made on account of it, two facts must be ascertained:

(1) when the debt owed to Roughen by debtor arose; and

(2) when the transfer on account of that debt occurred.

(i) When The Debt Arose.

As has been noted, the agreement between debtor and Roughen was oral rather than written. The precise terms and conditions of that agreement regrettably are unclear, as is evidenced by the rancorous dispute which arose concerning the amount of fees and commission to which Roughen was entitled.

Because little credible evidence was presented concerning the terms and conditions of that agreement, it is not possible to determine precisely when the debt owed to Roughen by debtor arose. In particular, it is not known whether Roughen was entitled to a commission when he introduced the willing buyer to the willing seller or, when the closing took place. The most accurate speculation would be between the above dates. Allegheny unquestionably owed a debt to Roughen by no later than March 30, 1990, when the contract for the sale of debtor's assets was consummated.

(ii) When The Transfer Occurred.

It already has been determined that three transfers of debtor's property in connection with the debt it owed to Roughen occurred in this case.

The first of these transfers—i.e., the execution of the first escrow agreement and the depositing of $50,000.00 with the escrow agent on March 30, 1990—is *not* to be considered in determining *when* the transfer on account of the debt owed to Roughen by debtor occurred. The second escrow agreement, executed in May of 1990, contained a provision that it "superseded and replaced in its entirety" the escrow agreement of March 30, 1990.

The Code specifies when a transfer occurs for purposes of § 547. A transfer does not necessarily occur at the same time that it takes effect. When a transfer occurs depends on whether it is perfected and, if it is, when perfection occurred. If a transfer is perfected at or within ten (10) days of when it takes effect, the transfer occurs when it takes effect. 11 U.S.C. § 547(e)(2)(A). If a transfer is perfected more than 10 days after it takes effect, the transfer occurs at the time of perfection. 11 U.S.C. § 547(e)(2)(B). If a transfer is not perfected by the later of the commencement of the bankruptcy case or 10 days after the transfer takes effect, the transfer is deemed as occurring immediately before the filing of the petition. 11 U.S.C. § 547(e)(2)(C). A transfer of property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee. 11 U.S.C. § 547(e)(1)(B).

The second escrow agreement, which took effect in May of 1990, is a type of transfer for which no further perfection is necessary or possible. For purposes of § 547, this transfer was perfected and thus occurred when it took effect. *Matter of Newcomb*, 744 F.2d 621, 616 n. 6 (8th Cir. 1984). Like the second escrow agreement, the transfer which took effect on August 14, 1990, when the escrow agent remitted the sum of $32,411.61 to Roughen, also was perfected and thus occurred when it took effect.

Both of these transfers occurred several months *after* March 30, 1990. Regardless

of which of them is considered, the debt on account of which that transfer was made was *antecedent* to the transfer.

### C.) *Made On Or Within 90 Days.*

■ A transfer is avoidable as a preference only if it occurred on or within 90 days before the filing of the bankruptcy petition or between one year and 90 days before the filing of the petition if the creditor was an insider. *See* 11 U.S.C. § 547(b)(4).

The trustee does not maintain that defendants are insiders with respect to the debtor. The trustee accordingly can prevail in this adversary action only if an interest of the debtor in property was transferred on or within 90 days of July 3, 1990, the date on which debtor filed a voluntary bankruptcy petition.

The determination already has been made that two transfers are relevant in this case. The one transfer occurred in May of 1990, when debtor, Graphics, the escrow agent, and Roughen executed the second escrow agreement. The other transfer occurred on August 14, 1990, when the escrow agent remitted $32,411.61 to Roughen.

The transfer that occurred in May of 1990 occurred within 90 days of the filing of the bankruptcy petition. The trustee accordingly may avoid that particular transfer. The fact that the other transfer occurred after, rather than before, the filing of the bankruptcy petition and thus is not avoidable pursuant to 11 U.S.C. § 547(b) does not prevent the trustee from avoiding the prior transfer. *In re Chenich*, 100 B.R. 512, 515 (9th Cir.BAP 1987), *appeal dismissed*, 883 F.2d 1023 (9th Cir. 1989).

The trustee is entitled to recover the value of a transfer which has been avoided from the entity for whose benefit the avoided transfer was made. *See* 11 U.S.C. § 550(a)(1). Judgment accordingly will be entered against defendants Howard Roughen and Roughen Investment Company for the value of that portion of the transfer which ultimately was remitted to

them by the escrow agent—i.e., $32,411.61, plus interest.

### III

### ADVERSARY NO. 90–0492–BM

■ The trustee takes the position in Adv. No. 90–0492–BM that the remaining $18,500.00 placed in escrow also was property of debtor's estate as of commencement of this bankruptcy case and seeks to have the funds turned over to the bankruptcy estate. Interpleader defendants Graphics and Roughen deny that these funds were property of the bankruptcy estate as of July 3, 1990.

■ This adversary action has been brought under 11 U.S.C. § 542(a), which provides in relevant part that:

> ... an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Section 542(a) requires anyone holding property of the estate as of the commencement of the bankruptcy case to deliver it to the trustee. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 369 (1977); *also* S.Rep.No. 989, 95th Cong., 2d Sess. 84 (1978).

The following must be shown in order to prevail in a turnover action:

(1) that the property which the trustee seeks to recover is property of the estate; and

(2) that the trustee is entitled under § 363 to use, sell, or lease the property.

*In re Weiss–Wolf, Inc.*, 60 B.R. 969, 975 (Bankr.S.D.N.Y.1986).

The burden of proof in a turnover action:

> ... is at all times on ... the trustee; he must at least establish a *prima facie* case. After that, the burden of explaining or going forward shifts to the other party, but the ultimate burden or risk of persuasion is upon the trustee.

*Gorenz v. Illinois Dept. of Agriculture,* 653 F.2d 1179, 1184 (7th Cir.1981); *Maggio v. Zeitz,* 333 U.S. 56, 63–64, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948). As part of the *prima facie* case, the trustee must establish, *by clear and convincing evidence,* that the assets at issue are part of the bankruptcy estate. *Evans v. Robbins,* 897 F.2d 966, 969 (8th Cir.1990) (*citing Maggio,* 333 U.S. at 64, 68 S.Ct. at 405). The burden of producing evidence sufficient to create a more than merely colorable question of fact concerning ownership of the property shifts to the party from whom the trustee seeks to recover only after the trustee has made out a *prima facie* case. *Gorenz,* 653 F.2d at 1185.

The trustee has failed to establish, by clear and convincing evidence, that the remaining $18,500.00 placed in escrow also is part of the bankruptcy estate.

Graphics agreed to pay Roughen's fees and commissions. The exact amount Graphics would pay was left unspecified. Graphics agreed instead to pay up to $50,-000.00 to Roughen. It already has been determined that the sum of $32,411.61 paid to Roughen in accordance with the terms of the second escrow agreement was part of debtor's bankruptcy estate because it unquestionably was part of the consideration paid by Graphics. The same cannot be said, with the required conviction and certitude, concerning the remaining $18,500.00. The trustee has failed to clearly and convincingly establish that this sum also was part of the consideration paid by Graphics. To the contrary, the evidence (much of which was presented by the trustee) indicates that it was *not* intended to be part of the consideration paid by Graphics when it purchased debtor's assets.

Had it been intended that this amount would be part of the consideration paid by Graphics, one would not expect it to revert to Graphics in the event Roughen was not entitled to it. Rather, one would expect it to go to debtor, as seller.

The only evidence in this regard is contained in the two escrow agreements. Neither agreement provided that this amount would be paid *to debtor* in the event it was not paid to Roughen. To the contrary, both agreements provided that it would be returned *to Graphics.*

The first escrow agreement provided that the escrow agent was to pay the sum of $18,500.00 to Graphics in the event that instructions concerning distribution were not received within one week. The second escrow agreement recited that Roughen and Graphics claimed entitlement to these funds. It did not recite that debtor claimed any entitlement thereto. The agreement provided that Roughen would institute an arbitration proceeding in state court to determine whether Roughen or Graphics was entitled to the funds. The agreement does not contemplate that debtor would receive the disputed funds upon resolution of the arbitration proceeding.

The trustee has failed to satisfactorily explain how these funds could be property of the bankruptcy estate in light of the above. If indeed they are property of the estate, the trustee has failed to so establish by clear and convincing evidence. The trustee's turnover action in Adversary No. 90–0492–BM accordingly must fail.

Appropriate Orders shall be issued.

### ORDER OF COURT

#### Adversary No. 90–0492–BM

AND NOW at Pittsburgh in said District this 28th day of June, 1991, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that judgment is entered in favor of Interpleader Defendants Allegheny Graphics, Inc. and Roughen Investment Company and against Plaintiff Stanley G. Makoroff, Trustee.

IT IS FURTHER ORDERED that the Clerk of Bankruptcy Court release the sum of $18,500.00 deposited with the Court by Defendant Lawyers Title Insurance Corporation to the Interpleader Defendants for further determination as to entitlement.

### ORDER OF COURT

#### Adversary No. 90–0493–BM

AND NOW at Pittsburgh in said District this 28th day of June, 1991, in accordance

with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that judgment is entered in favor of Plaintiff Stanley G. Makoroff, Trustee and against Defendants Roughen Investment Company and Howard J. Roughen in the amount of $32,411.61 plus interest at legal rate from August 14, 1990.