In re INTERNATIONAL BUILDING COMPONENTS, a Pennsylvania Corporation, Debtor.

Robert H. SLONE, Trustee, Plaintiff,

v.

INTEGRA BANK/PITTSBURGH, successor to The Union National Bank of Pittsburgh, Defendant.

Bankruptcy No. 86–0489–BM.
Adv. No. 92–2519–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 23, 1993.

David Abrams, Abrams & Mazer, Monroeville, PA, for plaintiff/Robert H. Slone, Trustee.

James F. Grenen, Kincaid, McGrath & O'Keefe, P.C., Pittsburgh, PA, for defendant/Integra Nat. Bank/Pittsburgh.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Robert Slone, chapter 7 trustee, has brought this adversary action against defendant Integra Bank/Pittsburgh ("Integra"), successor to Union National Bank of Pittsburgh ("UNB"). The complaint consists of two counts. Count I asserts that a preferential transfer of debtor's interest in property took place for the benefit of UNB, in violation of 11 U.S.C. § 547(b). Count II asserts that the transfer also was fraudulent, in violation of 11 U.S.C. § 548(a)(2). The trustee seeks to recover a payment of $27,500.00 made to UNB in connection with the transfer.

Integra denies that the transfer was fraudulent or preferential and insists that the trustee is not entitled to any recovery from it.

Judgment in the amount of $27,500.00 will be entered in favor of the trustee and against Integra in accordance with the analysis set forth below. However, in light of the unusual circumstances discussed below, Integra will be granted leave, if it so requests within ten (10) days of this order, to seek reconsideration with respect to a finding of fact upon which the judgment depends.

**-I-**

## FACTS

Debtor operated a building components and supply business. Its plant, also its principal place of business, was located at 900 19th Street, Windber, Pennsylvania.

On October 12, 1984, debtor entered into an agreement with Klaisler Manufacturing Company ("Klaisler") for the purchase of a Klaisler Model No. 640 Traveling Truss System. ("floor joist system"). The purchase price was $32,900.00. The floor joist system was designed to fabricate wooden floor and roof trusses for installation in residential and commercial building.

Arrow Financial Corporation ("Arrow") financed the purchase. On October 30, 1984, debtor entered into a so-called "lease agreement" with Arrow with respect to the machine. That same day, Arrow granted debtor an option to purchase the floor joist system from it for the sum of $1.00 plus any unpaid rentals due and owing under the lease.

Concurrently, Arrow was granted a security interest in the floor joist system.

Also on October 30, 1984, debtor executed a document captioned "Acceptance Certificate" wherein it acknowledged receipt of the equipment in good working order.

On November 6, 1984, Klaisler issued an invoice to debtor for the floor joist system.

Pursuant to the terms of its agreement with debtor, Klaisler supervised assembly and installation of the floor joint system at 900 19th Street, Windber, Pennsylvania.

The floor joist system was constructed primarily of steel with some rubber and copper components. Its total weight was approximately fifteen thousand (15,000) pounds.

It was shipped to debtor's plant by flatbed truck. Certain pieces of the floor joint system are too large to fit through an entrance that is thirty-six (36) inches in width.

The floor joist system was assembled and installed on site under the supervision

of a Klaisler representative. Debtor provided the labor and equipment needed to assemble and install the floor joist system. It took three (3) workers four (4) days to assemble and install the floor joist system at debtor's plant.

When it is fully assembled, the floor joist system runs along two steel tracks on either side which are fifty (50) feet in length. The segments of each track weigh eighty-five (85) pounds per yard and are joined together with an arc welder. The tracks are anchored to a concrete floor with forty-eight (48) steel belts which are 4¼ inches in length and ⅝th inch in diameter. The tracks are bolted to the floor in this manner for safety reasons and so that the floor joist system will operate properly.

The floor joist system is nine (9) feet wide and requires a space that is fifty (50) feet by nineteen (19) feet. It is powered by two 5–horsepower electric motors which require special 440 volt industrial wiring.

The life expectancy of a floor joist system is eighteen (18) to twenty (20) years. It can be disassembled and moved to another location. Disassembly takes approximately two (2) days.

Damage to a building when a floor joist system is removed is minimal. The only damage is forty-eight (48) holes in the floor where the anchor bolts had been placed. The bolts can, however, be driven into the floor until they are flush with it.

On November 8, 1984, debtor received notice from UNB that Arrow had assigned to UNB its rights under the above lease. Debtor was instructed to make lease payments directly to UNB. That same day, UNB issued a check made payable to Arrow in the amount of $32,610.50.

UNB filed a UCC–1 financing statement with the Secretary of the Commonwealth of Pennsylvania on November 13, 1984. The statement indicated that Arrow had a security interest in the floor joist system and that UNB was Arrow's assignee.

UNB filed an identical financing statement on November 14, 1984 with the Prothonotary of Cambria County, Pennsylvania.

On December 17, 1985, debtor executed an agreement with R.N. Sylvester & Sons, Inc. ("Sylvester"), wherein Sylvester agreed to purchase the floor joist system for the sum of $27,500.00. Shortly thereafter, the floor joist system was dismantled and removed from debtor's place of business and was transported to Sylvester's place of business, where it was re-assembled and installed.

A check in the amount of $27,500.00 was issued on behalf of Sylvester by Key Bank of August, Maine, on January 3, 1986. UNB and Arrow were the named payees.

On January 23, 1986, UNB filed a UCC–3 Termination Statement with the Prothonotary of Cambria County, Pennsylvania, indicating that it no longer claimed a security interest in the floor joist system.

UNB filed an identical document with the Secretary of the Commonwealth of Pennsylvania on January 27, 1986.

Debtor filed a voluntary chapter 11 petition on February 26, 1986. Schedule B–1, which was prepared by debtor, stated that it owned no real property.

The case was converted to a chapter 7 proceeding on October 4, 1990. An interim trustee, who ultimately resigned on June 12, 1992, was appointed shortly after conversion. The present trustee was appointed on June 25, 1992.

The above adversary action was brought by the trustee on December 16, 1992. The complaint seeks to avoid and to recover the payment of $27,500.00 to UNB by Sylvester in connection with debtor's sale of the floor joist system to Sylvester. Count I asserts that the transfer constituted a preference, in violation of 11 U.S.C. § 547(b). Count II asserts that the transfer was fraudulent, in violation of 11 U.S.C. § 548(a)(2).

Trial of the adversary action was conducted on August 30, 1993. The parties were given the opportunity to present evidence they deemed appropriate.

## –II–

## ANALYSIS

### A) *Preferential Transfer*

The following must be established in order for the trustee to prevail under 11 U.S.C. § 547(b):

(1) a transfer of debtor's property occurred;

(2) to or for the benefit of a creditor;

(3) for or on account of an antecedent debt owed by debtor before the transfer occurred;

(4) made while debtor was insolvent;

(5) made on or within ninety (90) days· before the filing of the bankruptcy petition, or within one (1) year if the creditor is an insider;

(6) the transfer enabled the creditor to receive more than it would if:

(A) the case had been brought under chapter 7;

(B) the transfer had not occurred; and

(C) the creditor received payment for the debt to the extent provided for under the Code.

*See In·re Allegheny Label, Inc.*, 128 B.R. 947, 951 (Bankr.W.D.Pa.1991).

■ The trustee has the burden of proving each of the above elements by a preponderance of the evidence. *Id.*

Elements (1), (2), (3), and (5) are clearly proved. ·A quick review of debtors' schedules makes short work of the issue found in element (4). Utilizing any standard of measurement, this debtor was insolvent.

The major bone of contention with respect to Count I involves element (6). Integra denies that this element has been established. According to Integra, UNB had a perfected security interest in the floor joist system and received only what it would have received in a chapter 7 proceeding. The trustee maintains that UNB received more than it would have received in a chapter 7 proceeding because it was an unsecured, rather than secured, creditor.

No explanation was provided in the complaint for the trustee's contention that UNB was unsecured with respect to its interest in the floor joist system.

The earliest indication of a basis for this allegation was provided in the pretrial statement, where the trustee asserts that UNB was unsecured *because* it had failed to file a financing statement with the appropriate authorities, in accordance with 13 Pa.C.S.A. § 9401.

Additional information about the trustee's position concerning UNB's alleged unsecured status was provided in proposed findings of fact and conclusions of law submitted by the trustee on the eve of trial. The trustee took the position that:

(1) the floor joist system was a fixture;

(2) in order to perfect its security interest in the fixture, UNB was required to file a financing statement with the Recorder of Deeds of Cambria County, Pennsylvania; and

(3) instead of filing it with the Recorder of Deeds of Cambria County, UNB erroneously filed its financing statement with the Prothonotary of Cambria County.

The trustee's position at trial was based on the premise that the appropriate filing required for perfection would have occurred in Cambria County. He attempted to show, however, that UNB had filed its financing statement with the wrong official *in Cambria County.* He did not allege or offer evidence at trial that UNB had filed its financing statement in the wrong county altogether.

### 1. *Was The Floor Joist System A Fixture?*

Integra took the position at trial that the floor joist system was personalty and not a fixture.

■ Pennsylvania law requires that a party must, in order to perfect its security interest in a fixture, file a financing statement in the office where a mortgage on the real estate would be filed—i.e., with the Recorder of Deeds of the county in which

the fixture is located. *See* 13 Pa.C.S.A. §§ 9313(a) and 9401(a)(2).

As has been noted, UNB did not file a financing statement with the Recorder of Deeds of Cambria County. Instead, it filed it with the Prothonotary of Cambria County.

The law as it pertains to fixtures is neither clear nor precise. A "fixture" is defined in the Uniform Commercial Code only as a good which becomes so related to particular real estate that an interest in it arises under real estate law. *See* 13 Pa. C.S.A. § 9313(a).

Chattel used in connection with real estate fall under Pennsylvania law, into either of three general categories:

> First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty.... Second, those which are so annexed to the property, that they cannot be removed without material injury to the real estate or to themselves; these are realty.... Third, those which, although physically connected with the real estate, are so affixed as to be removable, without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending on the intention of the parties at the time of the annexation.

*See Beardell v. Western Wayne School District,* 91 Pa.Cmwlth. 348, 353–54, 496 A.2d 1373, 1376 (1985) (*quoting Clayton v. Lienhard,* 312 Pa. 433, 436–37, 167 A. 321, 322 (1933)).

The floor joist system at issue in this case falls into neither of the first two above-enumerated general categories.

Unlike the first category, the floor joist system was "peculiarly fitted to the property with which ... [it was] used". It operated along two steel rails some fifty (50) feet in length which in turn were attached to the floor by (48) steel bolts which were 4¼ inches in length and ⅝ of an inch in diameter.

Unlike the second category, the floor joist system was so annexed to the real property that it could be (and in fact was) removed without material injury to the real property or to the equipment itself. As has been noted, the floor joist system was sold to Sylvester in December of 1985. It was dismantled and removed from the building in which it had been located and transported to Augusta, Maine, where it was reassembled and installed without material injury to the equipment. The damage to the building also was minimal. All that remained after its removal were forty-eight holes in the floor where the bolts had been anchored. The bolts thereafter were driven into the floor until they were flush with it. No other damage was done to the building when the floor joist system was disassembled and removed.

The floor joist system belongs to the third of the above-enumerated general categories. Its status as a fixture or personalty depends on the intention of the parties at the time of its annexation in 1984.

As is true of a myriad of other legal concepts, there is no bright-line test for determining such intent. The finder of fact must, at a minimum, consider and weigh the following factors when determining such intent:

(1) the nature of the personalty involved;

(2) the status of the possessor of the personalty in respect to the realty;

(3) the manner of annexation of the personalty; and

(4) the use to which the personalty is put.

*See Canon–McMillan School District v. Bioni,* 110 Pa.Cmwlth. 584, 596, 533 A.2d 179, 184 (1987), *remanded on other grounds,* 521 Pa. 299, 555 A.2d 901 (1989).

Determining the nature of the personalty at issue involves an inquiry as to whether the item is more like what is traditionally regarded as personalty (e.g., a sofa) or as real estate (e.g., a building). It also involves consideration of how the parties involved treated the item. *Id.*

The status of the possessor of the personalty in respect to the realty depends on whether the annexor is a mortgagee, lessee, lessor, owner, secured creditor, etc. *Id.*

The manner of annexation varies from gravity to being built into the realty. *Id.* The permanence of the attachment is not controlling as long as the item can be removed without physically damaging or diminishing the value of the item or of the realty. *Id.*

The use to which the personalty is put primarily involves consideration of the purpose for which the item was annexed to the realty. *Id.*

■ Consideration of the above four factors leads to the conclusion that the floor joist system was intended by the parties to be personalty rather than a fixture.

### (i) *The Nature Of The Floor Joist System*

While the floor joist system undoubtedly is larger than most items of personalty, there is nothing about its size which necessarily makes it more like realty than like personalty. Machinery even larger than the floor joist system—e.g., a bulldozer, an airplane, a tractor-trailer—is considered personalty despite its size.

Moreover, the fact that the floor joist system subsequently was disassembled and moved to another location suggests that it was treated more like personalty than like realty.

### (ii) *Status Of The Possessor*

Debtor's status with respect to the real property on which it was installed provides the most compelling evidence that debtor intended the floor joist system to be personalty rather than a fixture. Debtor did not own the real estate to which the floor joist system annexed. As has been noted, debtor indicated on its bankruptcy schedules that it owned no real property. The owner of the real property is unknown, as no evidence in this matter was presented at trial. It is highly improbable that debtor intended to make equipment which it had purchased part of someone else's freehold.

The most plausible inference is that debtor intended for the floor joist system to be personalty which it operated at its place of business on realty owned by another party.

The conduct of UNB reinforces this conclusion. It could be expected that UNB would have filed a fixture financing statement with the Recorder of Deeds, rather than with the Prothonotary, had it intended for the floor joist system to be a fixture.

### (iii) *Manner of Annexation*

The manner in which the floor joist system was annexed to the real property does not compel the conclusion that it was intended to be a fixture. To the contrary, it indicates that it was intended to be personalty.

The steel tracks upon which the floor joist system operated were bolted to the floor for safety reasons and so that it would operate properly. Absent these considerations, there is no reason to conclude that debtor would have gone to the expense of attaching it to the real property. There is no indication that it was so annexed with the intent of making it a part of the building in which it was located. The relative ease of removal and the lack of substantial damage to the realty weigh heavily to the contrary.

### (iv) *Use To Which Equipment Was Put*

Debtor operated a building components and supply business. The floor joist system was used by debtor to enable it to carry on its business by fabricating such components. This does not suggest that it was intended to be a fixture, notwithstanding the trustee's reference to the Industrial Plant Doctrine, which is generally considered helpful in other types of litigation such as tax assessment reviews, mortgage foreclosure matters, *inter alia.*

The foregoing considerations indicate that the floor joist system was intended by relevant parties to be personalty rather than a fixture. Accordingly, UNB's failure to file a financing statement with the Recorder of Deeds of Cambria County does **not** mean that it failed to perfect its securi-

ty interest and therefore is unsecured as against the trustee.

## 2. Did UNB File In The Wrong Geographic Location?

The determination that UNB's failure to file a financing statement with the Recorder of Deeds of Cambria County does not mean that its interest in the floor joist system was unsecured as against the trustee is not the end of the matter with respect to Count I of the complaint.

On September 3, 1993, some three days **after** trial had been conducted and the evidentiary record closed, the trustee submitted "supplemental" proposed findings of fact and conclusions of law in which yet another basis was offered for the trustee's assertion that Integra was an unsecured creditor. According to the trustee, the financing statement had been filed **in the wrong geographical location.** That is to say, it was filed erroneously in Cambria County when it should have been filed in Somerset County, Pennsylvania.

■ A party having a security interest in personalty must, in order to perfect its security interest, file a financing statement with the Secretary of the Commonwealth of Pennsylvania and with the Prothonotary of the county in which the debtor has its place of business. *See* 13 Pa.C.S.A. § 9401(a)(3).

The trustee presented no evidence at trial that Windber, Pennsylvania, where debtor had its place of business and where the floor joist system had been located, is in Somerset County rather than Cambria County. Although he does not expressly so indicate, the trustee obviously is asking this court to take judicial notice that Windber is located in Somerset County and not in Cambria County.

Federal Rule of Evidence 201 provides in relevant part as follows:

(a) **Scope of rule.** This rule governs only judicial notice of adjudicative facts.

(b) **Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) **When discretionary.** A court may take judicial notice, whether requested or not.

(d) **When mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) **Opportunity to be heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) **Time of taking notice.** Judicial notice may be taken at any stage of the proceeding.

■ Rule 201(f) provides that judicial notice may be taken by the court "at any stage of the proceeding". In a non-jury trial, judicial notice may be taken at any time prior to the decision, provided the opposing party is given an opportunity to be heard on the issue in compliance with Rule 201(e). *See* Wright and Graham, 21 Federal Practice and Procedure: Evidence § 5110 at pp. 522–23 (1977).

■ A trial court may take judicial notice of geographical locations and boundaries. *See Govt. of Canal Zone v. Burjan,* 596 F.2d 690, 694 (5th Cir.1979). The county in Pennsylvania in which Windber is located is not subject to reasonable dispute in that it is capable of accurate and ready determination by resorting to maps whose accuracy cannot reasonably be questioned. Accordingly, the court takes judicial notice that Windber, the location of debtor's place of business, is in Somerset County and not Cambria County.

■ As has been indicated, UNB filed a financing statement concerning the floor joist system with the Prothonotary of Cambria County, not with the Prothonotary of Somerset County.

It therefore follows that UNB's security interest in the floor joist system was not perfected and that UNB was an unsecured creditor as against the trustee. Failure to comply with the requirements of 13 Pa. C.S:A. § 9401(a)(3), where applicable, is fatal to a claim of perfection. *See In re Funding Systems Asset Management Corporation,* 111 B.R. 500, 515 (Bankr. W.D.Pa.1990).

Accordingly, judgment in the amount of $27,500.00 will be entered in favor of the trustee and against Integra because all of the elements required for a preference have been established.[1] However, because Integra did not have prior notification and an opportunity to be heard on the propriety of the court's taking judicial notice of the county in Pennsylvania in which Windber is located, Integra will be granted leave to request within ten (10) days from entry of the judgment against it a hearing on the matter. Reconsideration, if requested, will be limited only to the propriety of the court's taking judicial notice of the county in Pennsylvania in which Windber is located and to whether UNB filed a financing statement with the appropriate authority therein.

## B) *Fraudulent Transfer*

The trustee asserts in Count II of the complaint that sale of the floor joist system to Sylvester and the resultant payment of $27,500.00 by Sylvester to UNB constituted a fraudulent transfer, in violation of 11 U.S.C. § 548(a)(2).

The trustee has the burden of establishing each of the following in order to prevail under 11 U.S.C. § 548(a)(2):

(1) that a transfer of an interest of the debtor in property occurred;

(2) that the transfer occurred within one year of the filing of the bankruptcy petition;

(3) that the debtor received less than reasonably equivalent value; and

(4) that debtor was insolvent at the time of the transfer or became so as a result of the transfer.

*See In re Pittsburgh Cut Flower Company,* 124 B.R. 451, 456 (Bankr.W.D.Pa.1991).

The trustee has failed to establish element (3). He offered no evidence that debtor received less than reasonably equivalent value when it sold the floor joist system to Sylvester.

An appropriate order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 23rd day of September, 1993, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that judgment in the amount of $27,500.00 is entered in favor of plaintiff Robert H. Slone, trustee, and against defendant Integra Bank/Pittsburgh.

IT IS FURTHER **ORDERED, ADJUDGED** and **DECREED** that defendant Integra Bank/Pittsburgh is granted leave to seek, within ten (10) days of entry of this order, reconsideration of the court's taking judicial notice of the county in Pennsylvania in which Windber is located.

---

**1.** Integra half-heartedly denied in its trial brief that the first required element of a preference—i.e., that a transfer of debtor's interest in property occurred—is present in this case.

This denial is disingenuous. "Transfer" is defined in the Code as including:

... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property.

11 U.S.C. § 101(58)[54]. Debtor voluntarily disposed of its interest in the floor joist system when it was sold to Sylvester in exchange for the payment by Sylvester to UNB of the outstanding balance of the so-called "lease payments".