_In re_ **FIRST SOFTWARE CORPORATION, Debtor.**

**FIRST SOFTWARE CORPORATION, by the Disbursing Agent, Plaintiff,**

v.

**CURTIS MANUFACTURING CO., INC., Defendant.**

**Bankruptcy No. 86–10560.**
**Adv. No. 87–1110.**

United States Bankruptcy Court, D. Massachusetts.

Jan. 8, 1988.

---

**6.** This amount, of course, does not take into account any adjustment required by § 507(a)(4)(B).

212

Paul J. Ricotta, Hale and Dorr, Boston, Mass., for plaintiff.

Richard F. McCarthy, Willcox Pirozzolo & McCarthy, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

The matter before the Court is the Adversary Complaint filed on May 20, 1987 by the Disbursing Agent of First Software Corporation ("First Software") against Curtis Manufacturing Co., Inc. ("Curtis"). Pursuant to 11 U.S.C. § 547(b) (West 1987), First Software seeks from Curtis the recovery of a preferential payment totalling $22,580.44. Curtis admits that First Software has established the requisite elements under section 547(b), but contends that First Software cannot recover the payments in question because they were made in the "ordinary course." *See* 11 U.S.C. § 547(c)(2) (West 1987).

■ First Software paid three Curtis invoices by check no. 18767. The check was dated February 28, 1986. It was received by Curtis on March 7, 1986, and it cleared First Software's bank on March 11, 1986. The relevant information with respect to the payment in question may be summarized as follows:

| Invoice | Invoice Date | Terms[1] | Amount | # of Days (to Delivery) | # of Days (to Clear) |
|---|---|---|---|---|---|
| 7613 | 11/18/85 | Net 10 days | $ 4,704.33 | 109 | 113 |
| 7790 | 12/09/85 | Net 10 days | $ 6,911.85 | 88 | 92 |
| 7813 | 12/11/85 | Net 10 days | $10,964.26 | 86 | 90 |
| | | | $22,580.44 | | |

Section 547(c)(2) of the Bankruptcy Code provides:

(C) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;—

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms. . . .

11 U.S.C. § 547(c)(2) (West 1987). A creditor or party in interest against whom the recovery or avoidance of a preference is sought has the burden of proving by a preponderance of the evidence the nonavoidability of a transfer under section 547(c). 11 U.S.C. § 547(g) (West 1987).

The purpose of section 547 is "to discourage the race to the courthouse and to promote the equal treatment of creditors." *In re Independent Clearing House Co.*, 77 B.R. 843, 874 (D.Utah 1987). The purpose of the ordinary course of business exception to the trustee's power to avoid preferential transfers is "to leave undisturbed normal financial relations [of the debtor], because [they do] not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H.R.Rep. No. 595, 95th

---

**1.** The invoices introduced into evidence show that the terms were net 10 days. However, the 10 has been scratched out and replaced with a 30 on all the original invoices admitted into evidence. First Software conceded on the record that the terms were net 10 days.

Cong., 1st Sess. 373 (1977), *reported in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6329. Consequently, the exception is intended to "'encourage creditors to continue short term credit dealings with troubled debtors in order to forestall bankruptcy rather than encourage it.'" *In re Southern Commodity Corp.*, 78 B.R. 626, 628 (Bankr.S.D.Fla.1987), *quoting In re Morris*, 53 B.R. 190, 192 (Bankr.D.Or.1985).

 The Bankruptcy Code does not define "ordinary course of business." Accordingly, the Court must focus on the conduct of the parties involved. In other words, "'ordinary' contemplates what is ordinary with respect to the parties." *In re Fulghum Construction Corp.*, 78 B.R. 146, 152 (Bankr.M.D.Tenn.1987). The factors the Court should consider to determine whether a transferee has established the requirements of section 547(c)(2) include: 1) the prior course of dealing between the parties; 2) the amount of the payments; 3) the timing of the payments; and 4) the circumstances surrounding the payments. *In re White*, 58 B.R. 266, 269 (Bankr.E.D.Tenn.1986). Additionally, the Court should narrowly interpret section 547(c). *In re Fulghum Construction Corp.*, 78 B.R. at 152. *See, e.g., U.S. v. Rutherford*, 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979); *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100 (9th Cir.1975).

Although numerous courts have articulated the legal standard for determining what is and what is not within "the ordinary course of business," as this Court has just done, the Code's failure to define the term makes each determination a peculiarly factual one. Moreover, what may appear to be a straight forward determination in the abstract, can be problematic in specific instances, as is the case here. Thus, the Court must carefully consider all the evidence, bearing in mind that the defendant has the burden of proof.

Both First Software and Curtis submitted summaries of what they consider to be the controlling historical account relationship between them. Their focus is on whether payment was made in the normal course, *see* 11 U.S.C. § 547(c)(2)(B) (West 1987), not on whether the debt was incurred in the normal course or made in accordance with normal business terms. Thus, the only issue in this case is whether the payment of invoice nos. 7613, 7790, and 7813 made 109, 88 and 86 days after the invoice dates was in the ordinary course of business between First Software and Curtis.

Curtis, in Defendant's Exhibit 1, analyzed 20 checks it received from First Software between August 12, 1985 and March 7, 1986. These checks were allocated to invoices dated as early as April 22, 1985 and as late as December 11, 1985, as First Software typically issued one check to pay several Curtis invoices at one time.

Curtis concludes from the data summarized in its Exhibit 1 that the payment in question that was made 86, 88 and 109 from invoice date was within the ordinary course of business between Curtis and First Software because the payment falls within the range the data depicts, i.e, 35–134 days.[2] In other words, First Software, between August 12, 1985 and March 7, 1986, paid invoices anywhere between 35 to 134 days after the invoice date. According to Curtis, the average amount of time it took First Software to pay its invoices was 71.7 days. That figure is obtained by dividing the total number of days from invoice date to payment date for all invoices by the total number of payments (6364 divided by 89). Curtis also maintains that the payment in question does not substantially deviate from the average so as to fall outside the exception.

First Software's analysis is different from Curtis' in key respects. First Software's analysis begins with a payment made on September 27, 1985 and ends with a payment made on December 19, 1985.[3] It

---

**2.** Curtis' counsel, based on a quick examination of Defendant's Exhibit 1 during the trial, mistakenly suggested that the range was 40–134 days. Close inspection of the exhibit reveals a pay-

ment within 35 days of the invoice date on January 13, 1986.

**3.** First Software actually used the dates that these checks cleared the bank, i.e., between Oc-

shows that payments were applied to invoices dated from August 1, 1985 to October 11, 1985. Thus, it is clear that First Software's view of the business relationship of the parties is narrower in scope than that of Curtis. Indeed, First Software criticizes Curtis for including payments made within the preference period in its analysis—a criticism with which the Court agrees. More significantly, First Software's analysis only begins after August 1, 1985 when, as Ms. June Lustenberger, First Software's accounts payable clerk testified, First Software enjoyed a substantial improvement in its cash flow and, a concommitant ability to pay vendors on a timely basis. According to First Software, payments made in August and early to mid-September that were applied to invoices from May through July do not reflect the course of business as of the preference period, as Curtis suggests. Thus, First Software maintains the payments shown by check nos. 13748, 14545, 15625, 15823, 15887, 15995 and 16147 that were issued prior to First Software's improved cash flow position are not helpful in resolving the issue at hand. Accordingly, First Software insists that to fall within the section 547(c)(2) exception, the payment of invoice nos. 7613, 7790 and 7813 must have been made close to an average of 55 days from the date of invoice, or within a range of 50 to 70 days as its data depicts.

The Court is unconvinced by First Software's self-serving argument, for which no authority is cited, that it consider only the period of First Software's improved cash flow to determine the ordinary course of business between the parties. Nevertheless, the Court is persuaded that recognition of the payments in question as being made in the ordinary course simply because they were made between the extremes of 35 and 134 days is unwarranted. More-

over, the Court is inclined to agree with First Software to the extent that payments made closest in time to the preference period may be accorded slightly more weight as being indicative of the course of business.

Clearly, Curtis was reluctant to press its largest customer for prompt payment long before the bankruptcy petition was filed. Indeed, there was no evidence that it exerted any undue pressure on First Software to pay its invoices. Given Curtis' tolerance for long delays from invoice date to payment, and the fact that the amount of check no. 18767 is not out of the ordinary, the Court hereby determines that Curtis has established that the payment of invoice nos. 7790 and 7813, but not invoice no. 7613, was made in payment of debts incurred by First Software in the ordinary course of its business; that the payment of invoice nos. 7790 and 7813, but not invoice no. 7613, was made in the ordinary course of business of First Software and Curtis; and that the payment of invoice nos. 7790 and 7813, but not invoice no. 7613, was made according to ordinary business terms as between the parties. Accordingly, the Court hereby enters judgment in favor of First Software in the amount of $4,704.33 and against Curtis.

SO ORDERED.

tober 2, 1985 and December 29, 1985. Those dates are misleading, however, because in this circuit payment is made for purposes of section 547(c)(2) upon delivery of the check. *O'Neill v.*

*Nestle Libbys P.R., Inc.,* 729 F.2d 35, 38 (1st Cir.1985). *See also In re White River Corp.,* 799 F.2d 631, 633 (10th Cir.1986). Accordingly, the Court has adopted Curtis' dates of payment.