**In re GARDNER MATTHEWS PLANTA-TION COMPANY, Hilton Head Hotel Company, Vacation Resorts Holding, Inc., Vacation Resorts, Inc., Hilton Head Holdings Corporation, Debtors.**

**R. Geoffrey LEVY, Trustee, Plaintiff,**

v.

**D. Ed GATLIN, d/b/a Plantation Station, Defendant.**

Bankruptcy Nos. 86–03801, 86–03803 to 86–03805 and 86–03871.
Complaint No. 88–0353.

United States Bankruptcy Court, D. South Carolina.

May 8, 1989.

Joy S. Goodwin, Columbia, S.C., for plaintiff/trustee.

Vickie R. Steele, Columbia, S.C., for defendant.

## ORDER

WILLIAM THURMOND BISHOP,
Bankruptcy Judge.

The matter before the Court is the Adversary Complaint filed by R. Geoffrey Levy, Trustee ("Plaintiff") against D. Ed Gatlin, d/b/a Plantation Station ("Defendant") seeking recovery of preferential payments totalling $37,064.81. The Defendant admits that the Plaintiff has established the requisite elements under 11 U.S.C. § 547(b), but contends that the Plaintiff should not recover the payments because they were made in the "ordinary course of business" pursuant to 11 U.S.C. § 547(c)(2).

The Defendant is engaged in the sale of, among other things, gas and oil and has sold gas and oil to the Debtors over a period of several years. The payments complained of are summarized as follows:

1. *Check No. 1769, dated 9/5/86 in the amount of $8,000.00*

This check represents the payment for *undetermined past due invoices.*

2. *Check No. 091525, dated 9/5/86 in the amount of $2,072.81*

This check represents the payment of *finance charges on outstanding fuel bills,* more specifically:

(a) the March, 1986 fuel bill, dated April 2, 1986, in the amount of $6,176.61 invoice numbers 09922 and 09924;

finance charges paid:

| | |
|---|---|
| November, 1985 | $ 130.13 |
| December, 1985 | 140.22 |
| January, 1986 | 166.75 |
| January, 1986 | 166.75 |
| February, 1986 | 78.97 |
| | $ 682.82 |

(b) The April, 1986 fuel bill, dated May 1, 1986, in the amount of $8,001.06;

finance charges paid:

| | |
|---|---|
| January, 1986 | $ 166.75 |
| February, 1986 | 78.97 |
| March, 1986 | 92.65 |
| | $ 338.37 |

(c) the June, 1986 fuel bill, dated July 1, 1986, in the amount of $8,649.90, invoice numbers 11066 and 11068;

finance charges paid:

| | |
|---|---|
| January, 1986 | $ 166.75 |
| March, 1986 | 92.65 |
| April, 1986 | 120.02 |
| May, 1986 | 103.76 |
| | $ 483.18 |

(d) the July, 1986 fuel bill, dated August 5, 1986, in the amount of $10,020.45 invoice numbers 11734, 11727 and 11733;

finance charges paid:

| | |
|---|---|
| January, 1986 | $ 166.75 |
| March, 1986 | 92.65 |
| April, 1986 | 120.02 |
| May, 1986 | 103.76 |
| June, 1986 | 85.26 |
| | $ 568.44 |

3. *Check No. 091988, dated September 26, 1986, in the amount of $17,201.43*

This check also represents the payment of finance charges on outstanding fuel bills as well as actual fuel bills which includes:

| | |
|---|---|
| March, 1986 finance charges | $ 92.65 |
| April, 1986 finance charges | 120.02 |
| March, 1986 fuel charges | 6,176.61 |
| April, 1986 fuel charges | 8,001.06 |
| | $14,390.34 |

The above total is $2,811.09 less than the actual amount of the check. This amount represents payment of the August, 1986, fuel charges and was not considered a preference by the Plaintiff.

4. *Check no. 092597, dated October 16, 1986, in the amount of $12,601.66*

This check represents payments made for fuel charges pursuant to invoices 10384 and 10388, specifically:

| | |
|---|---|
| May, 1986 fuel charges | $ 6,917.43 |
| June, 1986 fuel charges | 5,684.23 |
| | $12,601.66 |

The four payments complained of were made between 108 and 191 days after the indebtedness was incurred by the Debtors.

In defense of the Plaintiff's preference claim, the Defendant introduced a chart showing the payment history between the Debtors and the Defendant for the period of August 1985 up to the time of the alleged preferential payments. The chart indicates that in the previous year, the lag time between invoice date and payment date was between 48 days and 123 days after the invoice date.

It is the Defendant's contention that the alleged preferential payments were made in the ordinary course of business of the Debtor and the Defendant.

Section 547(c)(2) of the Bankruptcy Code provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;—

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms....

■ The Bankruptcy Code does not define "ordinary course of business". Accordingly, the Court must focus on the conduct of the parties involved. In other words, "ordinary" contemplates what is ordinary with respect to the parties. *In re First Software Corporation*, 81 B.R. 211 (Bkrtcy.D.Mass.1988); *In re Fulghum Construction Corp.*, 78 B.R. 146 (M.D. Tenn.1987); *Matter of Van Huffel Tube Corporation*, 74 B.R. 579 (Bkrtcy.N.D. Ohio 1987).

■ The factors the Court should consider in determining whether a transferee has established the requirements of 11 U.S.C. § 547(c)(2) include: 1) the prior course of dealing between the parties; 2) the amount of the payments; 3) the timing of the payments; and 4) the circumstances surrounding the payments. *In re Jerry–Sue Fashions, Inc.*, 91 B.R. 1006 (Bkrtcy.S.D.Fla. 1988); *In re First Software Corp.*, 81 B.R.

211 (Bkrtcy.D.Mass.1988); *In re White*, 58 B.R. 266 (Bkrtcy.E.D.Tenn.1986).

■ In other words, a transferee needs to demonstrate some consistency with other business transactions between the debtor and the transferee. Cases which have held that the transferee failed to establish this element have done so on the basis that the payment was extraordinary in nature or amount, or was paid by some unusual method. *In re Magic Circle Energy Corporation*, 64 B.R. 269 (Bkrtcy.W.D.Okl. 1986); *In re Jerry–Sue Fashions*, 91 B.R. 1006 (Bkrtcy.S.D.Fla.1988).

Prior to 1984, Section 547(c)(2) provided that in order for the alleged preferential transfer to be excepted from the trustee's avoiding powers, it must have been made not later than 45 days after the debt was incurred. The Bankruptcy Amendments and Federal Judgeship Act of 1984 amended Section 547(c)(2) and eliminated that requirement. The 45–day limit was eliminated so that the provisions of the Code would comport with normal trade credit transactions. *See, In re Bourgeois*, 58 B.R. 657 (Bkrtcy.W.D.La.1986); 5 *Colliers on Bankruptcy* ¶ 547.10 at 547–45, 46 (15th ed. 1988). Since a specific time period between the date of debt and date of payment no longer applies to this section, the yardstick should be the time periods which the debtor and creditor used and relied on.

■ The Defendant testified that the Debtors were routinely late in their payments to him, and that he often had to telephone a representative of the Debtors and threaten to stop future sales in order to extract a partial payment. The fact that he did so within 90 days prior to the Debtors' bankruptcy filing was very "ordinary" and was, in fact, a normal and common occurrence. A further example of the parties' reliance on this course of dealing was that the Defendant imposed a monthly finance charge for late payments which is a common commercial practice, and which charge the Debtors accepted and routinely paid.

Although the Defendant's invoices stated that the total amount shown was due by

the 10th of the month following purchase, the parties established a course of dealing by which the Debtors were allowed to exceed the payment terms considerably. The payment history chart introduced into evidence by the Defendant demonstrates that payments were made on an irregular basis.

Considering the Defendant's tolerance for long delays from invoice date to payment, the fact that the amount of the checks were not out of the ordinary, and the fact that the checks were drawn on the Debtors' operating account as was customary by the Debtors, the Court finds that the four checks were made according to ordinary business terms between the Debtors and the Defendants and in the ordinary course of business of the Debtors and the Defendants. The evidence establishes that the ordinary course of business between these parties was fairly fluid. Neither the manner nor the timing of payment was at variance with the parties' course of dealing.

Therefore, the Court finds that the transfers were in payment of debts incurred by the Debtors in the ordinary course of business of the Debtors and the Defendant and that the four payments received by the Defendant which the Plaintiff seeks to recover were made in the ordinary course of business according to ordinary business terms and are not recoverable by the Plaintiff under 11 U.S.C. § 547(b).

This adversary complaint shall be dismissed and judgment rendered in favor of the Defendant.

AND IT IS SO ORDERED.