In re Roy Corbin FREENY and
Donna L. Freeny, Debtors.

Scott P. KIRTLEY, Trustee, Plaintiff,

v.

CONSOLIDATED NUTRITION,
L.C., formerly AGP, L.P. d/b/a
Supersweet Feeds, Defendant.

Bankruptcy No. 95–00006–W.
Adv. No. 95–0166–W.

United States Bankruptcy Court,
N.D. Oklahoma.

Oct. 10, 1995.

Scott P. Kirtley and Karen Carden Walsh, Tulsa, OK, for Plaintiff.

Mark D. Walz, Des Moines, Iowa, for Defendant.

### ORDER GRANTING "PLAINTIFF'S MOTION[S] FOR SUMMARY JUDGMENT ..."

MICKEY DAN WILSON, Chief Judge.

Now before the Court is a motion for summary judgment and brief in support filed by the plaintiff, and several documents in opposition thereto filed by the defendant. Upon consideration thereof, and of the record herein, this Court determines, concludes and orders as follows.

On January 3, 1995, debtors Roy Corbin and Donna L. Freeny ("the Freenys") filed their voluntary petition for relief under 11 U.S.C. Chapter 7 ("Ch. 7") in this Court. Scott P. Kirtley was appointed and continues to serve as Trustee ("the Trustee") of the Freenys' Ch. 7 bankruptcy estate.

On May 12, 1995, the Trustee filed his "Complaint" commencing this adversary proceeding against Consolidated Nutrition, L.C. d/b/a Supersweet Feeds ("Supersweet"). The Trustee alleged that, on or about October 18, 1994, the Freenys paid $14,729.45 by personal check to Supersweet; and that this payment constituted a preferential transfer, avoidable under 11 U.S.C. § 547(b) (and, pre-sumably, recoverable under 11 U.S.C. § 550, although the latter statute is not mentioned in the complaint). On May 30, 1995, Supersweet filed its "Answer," admitting payment on or about October 14, 1995 in the amount alleged; but denying all other elements of a voidable preferential transfer; and asserting as an affirmative defense that the transfer was made in the ordinary course of business under 11 U.S.C. § 547(c)(2).

This is a core proceeding, 28 U.S.C. § 157(b)(2)(F), complaint ¶ 3, answer ¶ 3.

On September 5, 1995, the Trustee filed his "... Motion for Summary Judgment and Brief in Support." On September 18, 1995, the Trustee filed a "... Supplemental Motion for Summary Judgment and Brief in Support." These documents are referred to conjointly as "the motion (for summary judgment)."

In his motion, the Trustee recites at length "... Material Facts Which are Not in Dispute," substantially as follows.

The Freenys were farmers, who began doing business with Supersweet in 1993. During 1993 and 1994, the Freenys engaged in three major series of transactions with Supersweet.

On April 20, 1993, the Freenys executed a Feeder Finance Credit Application and Agreement, hereinafter referred to as "the April 20, 1993 Agreement." Pursuant thereto, Supersweet gave the Freenys a line of credit in the sum of $15,500.00 to buy feed. This agreement provided that each credit purchase must be evidenced by a delivery invoice and/or promissory note. Repayment was due on November 1, 1993. Seven separate credit purchases, each evidenced by its promissory note, were made under the April 20, 1993 Agreement. As agreed, on November 1, 1993 the Freenys paid $15,515.57 to Supersweet in full satisfaction of all outstanding promissory notes. These facts are evidenced by copies of the April 20, 1993 Agreement itself, of the promissory notes thereunder, and of a receipt showing payment of the same, all appended to the motion for summary judgment.

On November 10, 1993, the Freenys executed a second Feeder Finance Credit Application and Agreement, hereinafter referred to as "the November 10, 1993 Agreement." Pursuant thereto, Supersweet gave the Freenys a line of credit in the sum of $19,500.00 to buy feed. This agreement also provided that each credit purchase must be evidenced by a delivery invoice and/or promissory note. Four separate credit purchases, each evidenced by its promissory note, were made under the November 10, 1993 Agreement, as follows:

(1) Promissory note for $6,322.04 dated December 8, 1993;

(2) Promissory note for $4,075.72 dated December 16, 1993;

(3) Promissory note for $5,526.40 dated February 7, 1994; and

(4) Promissory note for $3,575.69 dated March 7, 1994;

for a total of $19,499.85. All of these notes were due on June 10, 1994. These facts are evidenced by copies of the November 10, 1993 Agreement itself, and of the promissory notes thereunder, all appended to the motion for summary judgment.

On March 15, 1994, before the due date of the notes under the November 10, 1993 Agreement, the Freenys executed a third "Feeder Finance Credit Application and Agreement," hereinafter referred to as "the March 15, 1994 Agreement." Pursuant thereto, Supersweet gave the Freenys a line of credit in the sum of $20,000.00 to buy feed. This agreement also provided that each credit purchase must be evidenced by a delivery invoice and/or promissory note. Three separate credit purchases, each evidenced by its promissory note, were made under the March 15, 1994 Agreement, as follows:

(1) Promissory note for $6,914.18 dated April 12, 1994;

(2) Promissory note for $827.70 dated July 21, 1994; and

(3) Promissory note for $2,114.19 dated September 16, 1994;

for a total of $9,856.07. All of these notes were due on October 10, 1994. These facts are evidenced by copies of the March 15, 1994 Agreement itself, and of the promissory notes thereunder, all appended to the motion for summary judgment.

The Freenys made no payments on June 10, 1994 pursuant to the November 10, 1993 Agreement. They also made no payments on October 10, 1994 pursuant to the March 15, 1994 Agreement. This is conceded by Supersweet, and further appears from certain evidence discussed below.

According to the Trustee, at about this time the Freenys, because of financial difficulties, liquidated their entire herd of cattle, and paid the net proceeds to Supersweet, as described below. The evidentiary basis of these allegations does not appear, although it may be surmised that debtors so testified at their meeting of creditors under 11 U.S.C. § 341 or at an examination under F.R.B.P. 2004.

On October 18, 1994, the Freenys issued their personal check for $14,729.45 to Supersweet. This check cleared the Freenys' bank account on October 24, 1994. Appended to the motion for summary judgment are Supersweet's own statements, dated 5/31/94 (exhibit "W"), 9/30/94 (exhibit "X"), 9/30/94, 10/31/94 (exhibit "Y"), 9/30/94 (exhibit "Z") and 10/31/94 (exhibit "A–1"). These show that the "remittance" of $14,729.45 was applied against the balance then due of $20,455.01 on the notes attributable to the November 10, 1993 Agreement; and that none of this "remittance" was applied against the balance then due of $10,170.60 on the notes attributable to the March 15, 1994 Agreement.

The Freenys made their "remittance" 136 days after the due date of June 10, 1994 pursuant to the November 10, 1993 Agreement; and 77 days before they filed their Ch. 7 petition in this Court.

With their Ch. 7 petition, the Freenys also filed schedules and statements reporting assets valued at $216,687.00, liabilities of $285,890.34, income of $0.00, and expenses of $13,137.79 per month. The Court takes judicial notice of these documents, which are part of the record in the bankruptcy case. According to these schedules, most of the Freenys' property is claimed exempt, or subject to security interests, or both. The Trustee of-

fers a copy of his own "... Interim Status Report" filed in the case on March 8, 1995, which shows the abandonment of substantially all property of the estate, with zero value received by the estate, save the estate's preference claim against Supersweet. As the Trustee points out, "the only asset of this Bankruptcy Estate [available to unsecured creditors] is the preferential transfer to Supersweet ..." Unsecured priority claims are listed at $232.76; unsecured nonpriority claims are listed at $197,017.42; to these must be added secured-deficiency claims under 11 U.S.C. § 506(a) and the like, which the Freenys themselves estimate at $42,-230.16. This indicates total unsecured claims of some $239,480.34. According to dates given on the Freenys' Schedule F, most of their unsecured claims were owing months before the Freenys paid Supersweet in October 1994.

On September 20, 1995, Supersweet filed a document entitled "Resistance to Motion for Summary Judgment," and two days later a "Statement of Disputed Material Facts ..." and a "Memorandum Brief ..." in support thereof.

The "Resistance ..." and "Statement of Disputed Material Facts ..." are curious documents. In the manner of an answer to a complaint, they purport to "admit" or "deny" each of the facts which the Trustee lists as undisputed. Sometimes the denials are bare and unexplained, e.g. ¶ 4. Sometimes the Trustee's stated facts are "denie[d] for lack of information," e.g. ¶¶ 6, 8. Sometimes the Trustee's stated facts are contradicted by simple conclusory assertions, e.g. ¶¶ 9–13. The drift of these denials and contradictions is that the Freenys were solvent on October 18, 1994; that on that date they paid, not part of the balance due under the November 10, 1993 Agreement, but part of the balance due under the March 15, 1994 Agreement; and that such payment was in the ordinary course of business. No evidence is offered, in rebuttal of any of the Trustee's evidence, or in support of Supersweet's bare denials and conclusory assertions, save copies of the three notes under the March 15, 1994 Agreement.

■ A *prima facie* case for an avoidable preference under 11 U.S.C. § 547(b) is made by showing the following: (1) a transfer, (2) of an interest of the debtor in property, (3) to or for the benefit of a creditor, (4) for or on account of an antecedent debt owed by the debtor before such transfer was made, (5) made while the debtor was insolvent, (6) if the creditor was not an insider, made on or within 90 days before the date of the filing of the petition, (7) which enabled such creditor to receive more than he would have received if the transfer had not been made while the debtor continued into bankruptcy. The burden is on the Trustee to prove his *prima facie* case, see § 547(g). And, since the Trustee is the movant for summary judgment, the burden is on him to show that he is entitled to judgment without trial, *In re Curtis*, 38 B.R. 364, 367–368 (B.C., N.D.Okl. 1983).

There is not even a shadow of a doubt that elements (1), (2), (3), and (6) are satisfied herein.

■ Supersweet attempts to make an issue of element (4), antecedent debt. Supersweet asserts that the Freenys' payment may have been made in satisfaction of debts under the March 15, 1994 Agreement. However, Supersweet's own statements show clearly that the payment was applied against debts under the November 10, 1993 Agreement; and Supersweet offers absolutely no evidence to the contrary. Accordingly, there is no *genuine* issue on this point; and this element of an avoidable preference must be held to be established.

■ Supersweet attempts to make an issue of element (5), the Freenys' solvency on the date of the transfer. However, 11 U.S.C. § 547(f) provides that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." Supersweet offers absolutely no evidence which would tend to rebut this presumption. Accordingly, there is no *genuine* issue on this point; and this element of an avoidable preference is deemed satisfied.

■ · Supersweet also attempts to make an issue of element (7), preferential effect.

The Trustee's interim status report, and the Freenys' own schedules, show that, if the payment to Supersweet had not been made, the estate would have at most $14,729.45 in cash to pay unsecured claims of $239,480.34 plus an increase of $14,729.45 in Supersweet's own unpaid claim, for a total of $254,209.79. In such event, the estate would be able to pay each unsecured creditor only about 6% of his claim. As it actually happened, Supersweet received payment of about 75% of the amounts due under the November 10, 1993 Agreement, or about 50% of its total claim. The preferential effect of the Freenys' payment to Supersweet is obvious. In the face of these facts, Supersweet merely "denies for lack of information" the Trustee's demonstration of preferential effect. Supersweet offers absolutely no evidence which would tend to rebut the Trustee's showing of preferential effect. In this summary judgment context, Supersweet's "deni[al] for lack of information" and failure to offer any contrary evidence must be taken as a confession that Supersweet has no evidence or information that would tend to rebut the Trustee's showing of preferential effect. Accordingly, there is no *genuine* issue as to this matter, and this element of an avoidable preference must be held to be established.

■■■ All of the elements of an avoidable preference under 11 U.S.C. § 547(b) are established without genuine dispute. However, there remains Supersweet's affirmative defense under 11 U.S.C. § 547(c)(2). At trial, the burden would be on Supersweet to prove such defense, see § 547(g). But on the Trustee's motion for summary judgment, the burden is on the Trustee to show that Supersweet's affirmative defense need not be tried, *In re Curtis*, supra. This burden is met by showing that, in the event of trial, the court would have to direct a verdict for the movant, which in turn would occur if, under the evidence, there could be but one reasonable conclusion as to the verdict, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986) citing in turn *Brady v. Southern R. Co.*, 320 U.S. 476, 479–480, 64 S.Ct. 232, 234–35, 88 L.Ed. 239, 243 (1943); and see F.R.Civ.P. 50(a)(1) (changing the traditional terminology

"directed verdict" to "judgment as a matter of law"), 5A *Moore's Federal Practice* (2d. ed. 1995) ¶ 50.03. If the Trustee makes such showing, then Supersweet cannot rest on its denials, but must itself produce evidence showing that a genuine issue remains for trial, *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986).

11 U.S.C. § 547(c)(2) provides that a transfer, otherwise preferential under § 547(b), shall not be avoided if it was (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms.

As Supersweet correctly points out, there is no doubt that the first of these three elements is satisfied, i.e. that this transfer was in payment of a debt incurred in the ordinary course of business of both the Freenys and Supersweet.

Supersweet attempts to make an issue of the second and third elements. That is, Supersweet asserts that the transfer itself was made in the ordinary course of business of the Freenys and Supersweet, and according to ordinary business terms. Supersweet argues that this is "a question of fact," indeed a "peculiarly factual" or "particularly factual" question, which must be submitted to the jury, quoting *In re Standard Food Services, Inc.,* 723 F.2d 820, 822 n. 2 (11th Circ.1984), *In re Fulghum Const. Corp.,* 872 F.2d 739, 743 (6th Cir.1989), *In re Software Corp.,* 81 B.R. 211, 213 (B.C., D.Mass.1988), respectively; and also citing *In re Ajayem Lumber Corp.,* 143 B.R. 347, 353 (B.C., S.D.N.Y.1992), *In re Southwest Equipment Rental, Inc.,* 137 B.R. 263, 266 (B.C., E.D.Tenn.1992), *In re Carl Subler Trucking, Inc.,* 122 B.R. 318, 322 (B.C., S.D.Ohio 1990).

■■ These cases are of little help to Supersweet. *In re Standard Food Services, Inc.* makes a perfunctory general statement in a footnote to a dictum. *In re Southwest Equipment Rental, Inc.,* 137 B.R. p. 270, notes that subsection (c)(2) "is probably irrel-

evant," and then denies a *creditor's* motion for summary judgment because "the evidence presented by [the creditor] does not prove the payments were in the ordinary course of business," *id.* *In re Ajayem Lumber Corp.* (hereinafter *"Ajayem"*) holds as follows:

To the extent that the parties agree that the prior course of dealings between the debtors and [the creditor] consist of the 31 transactions contained in Appendix A, the court need not require testimony on the issue, which would *otherwise* be a question of fact requiring an evidentiary hearing,

143 B.R. p. 353 (emphasis added). Applied to this case, the rule of *Ajayem* would permit this Court to accept the parties' list of the transactions between the Freenys and Supersweet without submitting it to a jury. The rest, with still other cases noted by this Court, e.g. *In re Meridith Hoffman Partners,* 12 F.3d 1549, 1553 (10th Cir.1993), *Fidelity Savings & Investment Co. v. New Hope Baptist,* 880 F.2d 1172, 1177 (10th Circ. 1989), *In re Finn: Gosch v. Burns,* 909 F.2d 903, 907 (6th Circ.1990), do point out that the affirmative defense of "ordinary course" requires close attention to the facts of the particular case. But they do not hold that a mere unsupported assertion that an issue of fact exists under § 547(c)(2) requires a jury trial.

"Ordinary course" under § 547(c)(2) is difficult to define. The United States Supreme Court has ruled once on a narrow issue under § 547(c)(2), and refused to attempt a general explanation of the scope and intent of the statute, *Union Bank v. Wolas,* 502 U.S. 151, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991). A good discussion of the problem appears in *In re Fulghum Const. Corp.,* 872 F.2d p. 743, as follows:

The Bankruptcy Code does not define "ordinary course of business" or "ordinary business terms." Moreover, the legislative history of the provision is notably "sparse." *See, WJM, Inc. v. Mass[achusetts] Dept. of Pub. Welfare,* 840 F.2d 996, 1010 (1st Cir. 1988). However, subsequent case law is in agreement that this section was intended to "protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the Debtor and the transferee." *In re Energy Co–Op Inc.,* 832 F.2d 997, 1004 (7th Cir. 1987). Congress enacted § 547(c)(2) "to leave undisturbed normal financial relations, because they do not detract from the general policy of the preference section to discourage unusual action by either the debtor or creditors during the debtor's slide into bankruptcy." *In re Advance Glove Mfg. Co.,* 761 F.2d 249, 251 (6th Cir.1985) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5874).

Despite the foregoing standards, there is no precise legal test which can be applied; rather, th[e] court must engage in a "peculiarly factual" analysis. *In re First Software Corp.,* 81 B.R. 211, 213 (Bankr. D.Mass.1988). *See also In re Craig Oil Co.,* 785 F.2d 1563, 1565 (11th Cir.1986) (applicability of § 547(c)(2) turns on the specific events surrounding debtor's payments to defendant). The focus of th[e] court's inquiry must be directed to an analysis of the business practices which were unique to the particular parties under consideration and not to the practices which generally prevailed in the industry of the parties. *See WJM, Inc. v. Massachusetts Dept. of Pub. Welfare,* 840 F.2d 996, 1011 (1st Cir.1988) ("the cornerstone of this element of a preference defense is that the creditor needs demonstrate some consistency with other business transactions *between the debtor and the creditor"*) (quoting *In re Magic Circle Energy Corp.,* 64 B.R. 269, 273 (Bankr.W.D.Okla.1986) (emphasis added). Even if the debtor's business transactions were irregular, they may be considered "ordinary" for purposes of § 547(c)(2) if those transactions were consistent with the course of dealings between the particular parties. *In re White,* 58 B.R. 266, 270 (Bankr.E.D.Tenn.1986) (payments by debtor were "ordinary" even if they were made on irregular basis and debtor was allowed to maintain a significant amount owing to creditor at all times). *See also In re Craig Oil Co.,* 785 F.2d 1563, 1566–1567 (11th Cir.1986) (examining past terms of business between the parties

to determine if payments were made according to ordinary business terms).

The Court of Appeals of this Circuit has pointed to "ordinary trade credit transactions that are kept current," *In re Hedged–Investments Associates, Inc.*, 48 F.3d 470, 475 (10th Circ.1995) citing and quoting *In re Independent Clearing House Co.*, 41 B.R. 985, 1014 (B.C., D.Utah 1984), to "the kinds of terms that creditors and debtors use ... when debtors are healthy," *In re Meridith Hoffman Partners*, 12 F.3d p. 1553, and to debts incurred and paid as "a regular part of [debtor's] daily business ... without any indication that [debtor] was having financial difficulties ... and without acceleration or reduction in the payoff amount," *Fidelity Savings & Investment Co. v. New Hope Baptist*, 880 F.2d pp. 1177–1178, as examples of the types of transfers which are legitimately protected from avoidance under § 547(c)(2).

■ Conversely, a transfer is not "in the ordinary course" if it *does* consist of unusual action by either the debtor or creditors during and in connection with the debtor's slide into bankruptcy—which is *not* a regular part of debtor's daily business, made in the course of an ordinary trade credit or analogous transaction that is normally kept current, without acceleration or reduction in the payment amount—and is *not* consistent with other business transactions between the debtor and this creditor.

■ Making such a determination involves, not only finding what the facts are, but determining whether the facts indicate such unusual action, according to the standards mentioned above, as would fall outside the scope of the defense of § 547(c)(2), but within the scope of avoidable preference proscribed by § 547(b), as intended by Congress. Such an issue is not purely one of fact, but involves both fact and law. See 7A AM.JUR.2D (1991) "Trial" § 721.

■ Submission to the jury is proper where there is a discrepancy in the testimony, or where determination of the issue depends on the credibility of witnesses; or where more than one reasonable inference may be drawn from the testimony. Where there are no conflicts in the evidence, where

the facts are not disputed, where only one reasonable inference can be drawn from the evidence, and it remains only to apply the law to the undisputed facts, then there is no issue of fact to be submitted to the jury, and the question is one of law for the court. See 75A AM.JUR.2D, supra, §§ 714, 717, 719, 723–726, 728, 730, 732–734, 737–739. This is true even in the "peculiarly factual" context of § 547(c)(2), *Ajayem*, supra.

■ The Trustee asserts that the Freenys, because of financial difficulties, liquidated their entire cattle herd and paid the net proceeds to Supersweet. The Trustee does not show the source of this information, let alone whether such source cannot be impeached.

On the other hand, the record as it stands does establish the following: the Freenys had no financial dealings with Supersweet before 1993; all the Freenys' debts to Supersweet, incurred *before* the debts whose payment is in question, were repaid in full and precisely on time; the debts in question were repaid in reduced amount, more than 4 months late, at a time when debtors had become insolvent, less than 3 months before debtors filed Ch. 7 bankruptcy, at a time when other creditors were not being paid at all. Could any reasonable juror infer or conclude from this evidence that the Freenys' payment to Supersweet was usual—part of their daily business with Supersweet, consistent with other business transactions between them and Supersweet, keeping their account with Supersweet normally current, without reduction in the payment amount—and having no connection with the Freenys' slide into bankruptcy? The answer is, certainly not. All evidence now before this Court points to one thing only: that the Freeny's "remittance" to Supersweet was a classic preference, a highly unusual, late and partial payoff of an obligation in serious default, by debtors who were already broke and whose "slide into bankruptcy" was under way.

Supersweet's affirmative defense under 11 U.S.C. § 547(c)(2)(B), (C) is unsupported by any evidence in the record. If this matter were tried to a jury, the Court would have to direct a verdict in favor of the Trustee.

There are no *genuine* issues here; and the Trustee is entitled to judgment in his favor as a matter of law. Accordingly, the Trustee's "... Motion for Summary Judgment ..." and "... Supplemental Motion for Summary Judgment ..." must be, and the same are hereby, granted. The Trustee shall prepare and submit an appropriate form of judgment.

AND IT IS SO ORDERED.